IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

APRIL PRESTON,
    Plaintiff,

vs.                              Case No. 5:10cv210/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

**ORDER, REPORT AND RECOMMENDATION**

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.       PROCEDURAL HISTORY

       Plaintiff filed applications for DIB and SSI on October 27, 2006, and in each application she alleged disability as of September 21, 2006 (Tr. 10).[1] Her applications were denied initially and on

---

[1] All references to "Tr." refer to the transcript of Social Security Administration ("SSA") record filed on December 3, 2010 (Doc. 14). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

reconsideration (*id.*). On March 2, 2010, following a hearing, an administrative law judge ("ALJ") issued a decision in which he found Plaintiff "not disabled" under the Act (Tr. 10–19). And on June 11, 2010, the Appeals Council denied Plaintiff's request for review (Tr. 1–3). Thus, the decision of the ALJ stands as the final decision of the Commissioner, now subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.     FINDINGS OF THE ALJ

In his decision dated March 2, 2010, the ALJ made several findings relative to the issues raised in this appeal (Tr. 10–19):

- Plaintiff meets the insured status requirements of the Act through December 31, 2011.[2]
- Plaintiff has not engaged in substantial gainful activity since September 21, 2006, the date she alleges she became disabled.
- Plaintiff's anxiety and depression are "non-severe" impairments.
- Plaintiff's asthma, lumbar degenerative disc disease ("DDD"), chronic obstructive pulmonary disease ("COPD"), and inflammatory bowel disease are "severe" impairments, but alone or in combination do not meet or equal a listed impairment.
- Plaintiff can perform her past relevant work as a salesperson and maintenance worker, as those jobs do not require the performance of work-related activities precluded by her residual functional capacity; Plaintiff has therefore not been under a disability, as defined in the Act, from September 21, 2006, through March 2, 2010.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983),

---

[2] Thus, the time frame most relevant to this appeal is September 21, 2006 (alleged onset) to March 2, 2010 (the date of the ALJ's opinion), although Plaintiff is insured—for DIB purposes—well beyond the date of the ALJ's decision.

Case No. 5:10cv210/RS/EMT

*superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this Report and Recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

     3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

     4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

     5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL AND MENTAL HEALTH HISTORY[4]

    A.    Personal History

Plaintiff alleges disability as of September 21, 2006, based on arthritis, back deterioration, bulging discs, night blindness, no feeling in her right leg, COPD, and depression (Tr. 10, 184). At the time of her alleged onset of disability, Plaintiff was thirty-eight years of age, with past relevant work as a general merchandise salesperson, municipal maintenance worker, and housekeeper (Tr. 18, 265, 270).

---

[4] Plaintiff's only claim for relief in this appeal concerns the ALJ's consideration of her mental impairments. It is therefore unnecessary to fully discuss treatment records that relate to Plaintiff's physical conditions. In short, though, the undersigned notes that the earliest treatment records in Plaintiff's file are dated in August 2005, and they reflect complaints of, or treatment for, pain in the lower back and right leg (*see, e.g.*, Tr. 300–02). A lumbar MRI obtained in September 2005 revealed DDD and some disc protrusion and other abnormalities at various levels of the lumbar spine (Tr. 305). More recent records document additional treatment for pain in the lower back and right leg, as well as treatment for—or complaints of—asthma, abdominal pain and swelling, and other physical ailments (*see, e.g.*, Tr. 273, 286, 299, 319, 420, 425). Additionally, a second lumbar MRI was obtained in April 2007, with no significant changes observed from the earlier MRI (*see* Tr. 368).

B.   Relevant Mental Health History

In August and September of 2005, Plaintiff was evaluated by Douglas L. Stringer, M.D., in connection with complaints of leg and back pain (Tr. 358, 361). Dr. Stringer noted in his report that Plaintiff had "no complaints of anxiety, depression or mood swings" (Tr. 358, 362). Additionally, Plaintiff was alert and conveyed the "details of her illness well" (Tr. 357, 361).

In December 2005 (and on at least one other occasion, presumably between August 2005 and October 2006) Plaintiff presented to an emergency room ("ER") with complaints related to her back and leg (*see* Tr. 302, 313). ER records reflect that Plaintiff was oriented as to person, place and time, and her mood and affect were normal (Tr. 302, 314).

As best can be discerned from the next set of treatment records, many of which are handwritten, it appears that Plaintiff first mentioned "anxiety" or anxiety-related symptoms in mid-August 2006, to Misal Khan, M.D., her primary care physician (*see* Tr. 289). Dr. Khan prescribed Xanax and continued Plaintiff's Xanax prescriptions in September and October 2006 (Tr. 286, 288, 289).

On January 4, 2007,[5] at the request of the SSA, Plaintiff presented to Dr. David A. Loiry, Ph.D., for a consultative examination (Tr. 269). Dr. Loiry noted that Plaintiff dressed, groomed, and spoke appropriately, and she was cooperative and made good eye contact (Tr. 269–70). Plaintiff stated that she completed the seventh grade in regular classes and noted that she gets along well with others (*id.*). She reported being depressed and anxious due to her physical problems and stated she was taking Xanax for anxiety (*id.*). Dr. Loiry observed that Plaintiff's insight and judgment were "good," she was oriented as to place but not time (i.e., she stated it was Wednesday when it was actually Thursday), her immediate memory was "good" and recent memory "fair," her fund of information was "fair +," and she was of "at least" average intelligence (Tr. 270). Dr. Loiry assessed mood disorder due to multiple physical impairments with depressive features and anxiety disorder due to multiple physical impairments with generalized anxiety (*id.*). He opined that Plaintiff's "diagnosis did not look good unless a way [could] be found to treat [Plaintiff's] physical

---

[5] Dr. Loiry's report is dated January 4, 2006 (Tr. 269–70). This appears to be a typographical error, as the agency authorization and billing invoice for Dr. Loiry's examination shows that Plaintiff's appointment was set for January 4, 2007 (Tr. 271). Moreover, Plaintiff told Dr. Loiry she was taking Xanax for anxiety and that it was prescribed by Dr. Kahn, which is more consistent with an examination date (by Dr. Loiry) in January 2007, which is after Plaintiff began seeing Dr. Khan.

Case No. 5:10cv210/RS/EMT

problems and reduce her pain" and that without improvement in these areas, he would expect Plaintiff's depression to continue and possibly deepen (*id.*). Dr. Loiry also opined that Plaintiff was "not employable at the present time and this adds to her depression" (*id.*). Finally, Dr. Loiry indicated that if DIB or SSI funds were awarded, Plaintiff could manage the funds (*id.*).

On January 29, 2007, Robert Stainback, a non-examining agency consultant,[6] completed a Psychiatric Review Technique Form ("PRTF") (Tr. 330–43). He evaluated Plaintiff's psychiatric conditions under Section (or "Listing") 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (affective disorders) and Section 12.06 (anxiety-related disorders) (Tr. 330). Dr. Stainback opined that Plaintiff's conditions do not satisfy the diagnostic criteria of the Listings (Tr. 333, 335, 341–42). As a result of Plaintiff's disorders, however, Dr. Stainback opined that Plaintiff would have mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace (Tr. 340). Plaintiff would, however, have no restriction in activities of daily living or any extended episodes of decompensation (*id.*).

Plaintiff returned to Dr. Stringer on March 23, 2007, and reported a history of psychiatric problems (Tr. 356). Dr. Stringer noted that Plaintiff was "awake [and] alert, and [gave] details of her illness well" (Tr. 355). He also noted that Plaintiff had no apparent adverse side-effects from her medications (Tr. 354). Plaintiff returned on May 4, 2007, and had "no complaints of anxiety, depression or mood swings" (Tr. 353).

Plaintiff returned to Dr. Khan on August 3, 2007, with complaints of anxiety and back pain (Tr. 380). Dr. Kahn again prescribed Xanax for Plaintiff's reported anxiety (*see id.*).

On August 29, 2007, at the request of the SSA, Plaintiff underwent a psychological, consultative evaluation by James E. Hord, Jr., Ph.D. (Tr. 394–96). When questioned by Dr. Hord, Plaintiff "denie[d] having any previous mental health experience" (Tr. 394). She reported that she quit school in the seventh grade because she got pregnant, and she stated that when she was in school she was in special education classes (*id.*). Dr. Hord commented that Plaintiff was "neat and clean," and her thought processes showed no indication of loosening (Tr. 395). He noted that

---

[6] The transcript of this case does not reflect this consultant's credentials. The undersigned notes, however, that in another Social Security case referred to her, Trotter v. Astrue, Case No. 5:08cv318/MCR/EMT, a Robert Stainback, Ph.D., is identified as a state agency psychologist (*see id.*, pp. Tr. 133–36 of Social Security transcript). Given the great likelihood that the consultant in both Trotter and this case are the same individual, the court shall refer to this consultant as "Dr. Stainback."

Plaintiff's mood and affect were "mildly depressive," her attitude was "relatively flat but mildly depressive," "sensorium and congnitions" were clear, and Plaintiff was oriented as to person, place and time (*id.*). Dr. Hord estimated that Plaintiff's intellectual ability was in the borderline range, but he noted he had not conducted any intelligence testing and stated, "In order to assess her ability to hold employment, I think that this [apparently referring to I.Q. testing] should be looked at specifically because it relates to abilities in general." (*id.*). In relevant part Dr. Hord assessed depression, NOS, and a GAF score of 50[7] (*id.*). Finally, concerning Plaintiff's functional abilities, Dr. Hord commented as follows:

> I see her as being quite limited and if a disability award were granted to [Plaintiff,] . . . it is marginal whether she can accept responsibility for her own funds at this time. I think that she could assume this task but I would like to see some background of her previous experience in exercising similar levels of responsibility.

(Tr. 396).

On September 6, 2007, Shirley Ellis, Ph.D., a non-examining agency psychologist, completed a PRTF (Tr. 399–412). She evaluated Plaintiff's depression and anxiety under Listings 12.04 and 12.06 and opined that Plaintiff's conditions do not satisfy the diagnostic criteria of the Listings (Tr. 399, 402, 404, 341–42). Additionally, Dr. Ellis assessed the same functional limitations as Dr. Stainback (that is, in relevant part, "none" or only "mild" limitations) (Tr. 409). In explaining her opinions, Dr. Ellis suggested that she disagreed—to some extent—with the opinions expressed by Dr. Hord because they were based on questionable information provided by Plaintiff (*see* Tr. 411). For example, Dr. Ellis noted that Plaintiff told Dr. Hord that when she was in school she was in special education classes but stated at another time she was in regular classes (*id.*). Dr. Ellis also noted that Dr. Hord's suggestion—that Plaintiff would not be capable of managing funds—was contradicted by evidence in the record demonstrating that Plaintiff previously worked for five years as a cashier (*id.*).

---

[7] Global assessment of functioning ("GAF") is the overall level at which an individual functions including social, occupational, academic, and other areas of personal performance. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 30–32 (4th ed. 1994). It may be expressed as a numerical score. *Id.* at 32. A score between 41 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*

Plaintiff returned to her primary care physician, Dr. Khan, in January 2008 and complained of anxiety and low back pain (Tr. 440). Dr. Khan prescribed Xanax and Lortab (*id.*). Plaintiff returned on approximately a monthly basis between February 2008 and January 2009, and—in relevant part—Dr. Khan's treatment records from that time frame are the same as those from January 2008 (*see* Tr. 430–39). Dr. Khan's most recent treatment records, one dated in April and one in May of 2009, contain no mention of anxiety and reflect no prescriptions for Xanax (*see* Tr. 428–29).

On September 3, 2009, Plaintiff presented to the Community Health Center of Bay County ("CHCBC") and reported "mild anxiety" in addition to some physical problems (Tr. 445). The handwritten notes appear to reflect that Plaintiff was assessed with anxiety and prescribed Xanax (*id.*). Plaintiff returned to the CHCBC on September 29, 2009, and reported flu-like symptoms (*see* Tr. 444). She made no complaint of anxiety, and no prescription for Xanax was provided (*id.*).

Finally, on February 1, 2010, at the request of the SSA, Plaintiff was examined by Robert S. Kline, III, Psy.D., a licensed clinical psychologist (Tr. 453). Plaintiff advised Dr. Kline that she was disabled, in part, due to depression and poor concentration skills (*id.*). She reported that she experienced depression "throughout her life" and that memory problems surfaced "a long time ago" and were getting "worse and worse" (Tr. 453, 455). Plaintiff reported attending school through the sixth grade in special education classes and subsequently obtaining a General Educational Development diploma ("GED") (Tr. 454). Plaintiff stated she was not taking any medications for depression or anxiety, but she had previously taken such medications as prescribed by her primary care physician and that the medications "helped" (*see* Tr. 453–54). She stated she had never received treatment from a mental health provider or specialist (*see* Tr. 454). Dr. Kline observed that Plaintiff maintained appropriate eye contact during the evaluation; she was polite and cooperative; her speech—although poorly articulated—was normal and readily understood; her thought processes were essentially normal; and she understood comments, commands, and questions without difficulty (Tr. 454–55). Although Plaintiff insisted that she was unable to perform even basic concentration tasks, Dr. Kline noted that he identified no significant decline in attention during the interview and that Plaintiff was "able to attend to the interview without distraction" (Tr. 455).

Adult intelligence and memory tests administered by Dr. Kline yielded "very poor[]" results, but Dr. Kline stated that the results were "far below what would have been expected based on [Plaintiff's] reported history and presentation during the interview" (Tr. 455). For example, Dr.

Kline noted, Plaintiff's "performance on the intelligence measure was so exceedingly low that the results nearly fell in the profound range of mental retardation, which would render her incapable of all forms of independent functioning and personal care including feeding, toileting, and personal grooming" (*id.*). He therefore questioned the accuracy of the results, suspected malingering by Plaintiff, and administered a test designed to detect malingering (i.e., the "Rey 15-Item Test" or "Rey 15") (Tr. 455–56). The results of the Rey 15 reflected obvious feigning and exaggeration of memory problems; thus, Dr. Kline expressed his strong belief that the results of both the intelligence and memory tests were invalid, and he suggested that the validity of any other assessment results should likewise be questioned (*see* Tr. 456). As a result of Plaintiff's symptom exaggeration, Dr. Kline declined to fill out a mental RFC form (*see* Tr. 458–60). He also declined to provide formal diagnoses, although he assessed a GAF score of 65[8] (Tr. 456–57).

V.  DISCUSSION

Plaintiff raises two, related issues in this appeal. Specifically, she contends the ALJ erred by failing to properly evaluate her mental impairments and in failing to find her learning disability and depression severe at step two of the sequential evaluation. The Commissioner asserts the ALJ did not err in either regard.

At step two of the sequential evaluation process, the claimant must prove that she is suffering from a severe impairment or combination of impairments, that have lasted (or must be expected to last) for a continuous period of at least twelve months, and which significantly limit her physical or mental ability to perform "basic work activities." *See* 20 C.F.R. §§ 404.1509, 404.1520(c) 404.1521(a). Basic work activities include mental functions such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting (as well as physical functions not at issue here). 20 C.F.R. § 404.1521(b). An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age,

---

[8] A GAF score between 61 and 70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994).

education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account"). Although the claimant carries the burden at step two, the burden is mild. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ( "Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that "her impairment is not so slight and its effect is not so minimal." *Id.*

The regulations mandate specific procedures for evaluating mental impairments. *See* 20 C.F.R. § 404.1520a and 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 *et seq.*. Listing 12.00 addresses various potentially disabling mental impairments and instructs that the listing for each impairment begins with a narrative statement describing the disorder. Listing 12.00 then requires evaluation of two sets of criteria known as "Paragraph A" and "Paragraph B" criteria. Paragraph A criteria relate to medical findings. Paragraph B criteria address impairment-related functional limitations in four broad areas: activities of daily living; social functioning; concentration, persistence and pace; and repeated episodes of decompensation (*see, e.g.*, Listing 12.00C). Generally, a mental impairment is deemed non-severe at step two if the degree of limitation in the first three functional areas is "none" or "mild," and the degree of limitation in the fourth area is "none," "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

    A.    Learning Disability

The ALJ did not err at step two in failing to find Plaintiff's learning disability a severe impairment. Initially, Plaintiff did not allege she was disabled due to a learning disability in her first or subsequent disability reports (Tr. 184, 237, 256, 260). Additionally, at her hearing before the ALJ she testified about her physical problems (and related limitations), as well as depression, anxiety, stress, and crying spells, but she did not advise the ALJ that she had a learning disability (*see* Tr.

39–59).⁹  Although Plaintiff testified that she was in special education classes, she stated in her disability report that she had not attended any special education classes, and she told Dr. Loiry she had no special education (Tr. 32, 192, 270).¹⁰  Thus, the ALJ did not err in failing to create or evaluate a basis for disability that Plaintiff failed to allege.  "[I]t has been persuasively held that an [ALJ] is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."  Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005) (unpublished) (citing Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)) (internal quotation omitted).  Furthermore, this is not a case where the claimant was unrepresented, subjecting the ALJ to a heightened duty to probe into all of the relevant facts surrounding her disability claim.  *See, e.g.*, Brown v. Shalala, 44 F.3d 931, 934–35 (11th Cir. 1995) (holding that, where the right to counsel has not been waived, if claimant is not represented, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.").

Even if Plaintiff adequately alleged "learning disability" as a basis for her DIB and/or SSI claims, the record refutes any suggestion that her disability is severe.  First, there are no medical findings or other such documentation establishing that Plaintiff has this medically determinable mental impairment.  No treating, consulting, or examining source diagnosed a learning disability, including Dr. Kline, who—despite administering the WAIS-IV to Plaintiff—was unable to make any diagnosis (Tr. 270, 395, 455–56).  This is significant because an impairment that cannot be shown by medically acceptable clinical or laboratory diagnostic techniques, such as the WAIS-IV, is "not severe."  *See* 20 C.F.R. § 404.1508.  Moreover, the record establishes that Plaintiff worked

---

⁹ Plaintiff did advise the ALJ that she "can't barely read," but she attributed this deficit to poor vision (Tr. 48).  When asked about her reading abilities before her vision problems, Plaintiff stated she could not "read that well" (*id.*), but she did not state she was unable to read or write or that she was unable to read or write due to a learning disability.  Additionally, although Plaintiff testified that someone else filled out disability forms for her, it appears that someone else did so because of Plaintiff's poor eyesight and not her poor reading skills (*see id.*).  Indeed, on a disability report Plaintiff specifically stated that she can read and "write more than her name" (Tr. 183).

¹⁰ The record is not entirely clear regarding Plaintiff's education.  At one time Plaintiff reported that she had one year of college with no special education classes, while at other times she reported that she had a seventh-grade education with special education classes, a seventh-grade education with no special education classes, a GED with special education classes, and a sixth-grade education with special education classes (*see* Tr. 32, 192, 270, 394, 454; *but see* Tr. 31–32 (Plaintiff's testimony that a friend filled out a disability report for her and erroneously reported that Plaintiff attended one year of college)).  The ALJ essentially found Plaintiff had a sixth-grade education with special education classes (Tr. 62).  He also found that Plaintiff can still perform her past relevant work (Tr. 18). The ALJ's latter finding is consistent with the regulations because a claimant's level of education is immaterial to her ability to perform past relevant work.  *See* 20 C.F.R. § 404.1560(b)(3).  Plaintiff does not argue otherwise.

for several years despite any learning disability, including work as a cashier for approximately five to six years (Tr. 172–76, 185, 194). *See* Goff v. Barnhart, 421 F.3d 785, 792–93 (8th Cir. 2005) (fact that claimant gainfully worked with her impairment, after suffering a second stroke, coupled with the absence of evidence of significant deterioration in her condition, demonstrates that her impairments are not disabling in the present). Additionally, Plaintiff reported that she stopped working due to physical limitations and that she could not return to work due to physical limitations and depression, not because of a learning disability (*see, e.g.*, Tr. 184). Thus, Plaintiff is not entitled to relief on this claim.

B.   Depression

Plaintiff essentially asserts that the ALJ erred in failing to find her depression severe because he ignored the reports of Drs. Hord and Loiry and "selectively picked evidence that was favorable to the [Commissioner]" (e.g., the GAF score of 65 instead of the GAF score of 50) (Doc. 20 at 11–12). Plaintiff also alleges that her mental impairment(s) should have been deemed severe based on Dr. Kline's opinions. More specifically, Plaintiff notes that Dr. Kline's intelligence and memory assessments produced very poor results and, as to the intelligence measure, that the results were "'so exceedingly low that [they] nearly fell in the profound range of mental retardation, which would render her incapable of all forms of independent functioning and personal care including feeding, toileting, and personal grooming'" (Doc. 20 at 12 (quoting Tr. 455)).

First, Plaintiff's assertions as to Dr. Hord and Dr. Kline are disingenuous and provide no basis for relief. As to Dr. Hord, the record reflects that the ALJ and Plaintiff's counsel specifically discussed Dr. Hord's findings at Plaintiff's hearing (Tr. 66–67), which findings include the GAF score of 50 (Tr. 393–96). As Plaintiff's counsel acknowledged at the hearing, however, Dr. Hord's opinions cannot be translated into any useful or specific functional limitations (moreover, Dr. Hord's report is in some respects unclear, and it reflects that no intelligence testing was conducted even though Dr. Hord noted that such testing would be helpful in assessing Plaintiff's abilities) (*see* Tr. 66–67, 394–96). The ALJ therefore suggested to Plaintiff's counsel that Plaintiff be referred for a consultative examination ("CE") with a specific request that the examiner complete a mental RFC assessment and conduct intelligence testing (*see* Tr. 67). Plaintiff's attorney agreed with the ALJ's suggestion (indeed, counsel noted that such an examination would be helpful) and reiterated that the examiner should conduct intelligence testing, noting in relevant part that Dr. Hord listed an Axis II

diagnosis of "Mental Retardation — Borderline — Rule out" (but conducted no IQ testing) (Tr. 66–67, 395). The ALJ agreed and stated that Plaintiff would be referred for a CE that included both intelligence testing and memory testing (Tr. 67). Plaintiff, with counsel's agreement, was therefore referred for a CE (which was performed by Dr. Kline). Thus, based on the foregoing it is obvious that the ALJ was well aware of Dr. Hord's report, but he—and Plaintiff's counsel—recognized that it was an insufficient measure of Plaintiff's abilities and that another CE was necessary. Accordingly, while the ALJ failed to specifically mention Dr. Hord's opinions in his written decision, any error in his failure to do so is harmless. The ALJ's reasons for excluding Dr. Hord's opinions from the evaluation of Plaintiff's claim are obvious, well-founded, and—at least initially—endorsed by Plaintiff's counsel.

As to Dr. Kline, Plaintiff's assertions are not only disingenuous, they are blatantly misleading. As detailed *supra*, Plaintiff performed poorly on Dr. Kline's intelligence and memory tests <u>because</u> she greatly exaggerated her symptoms (as evidenced by Dr. Kline's own observations and Plaintiff's performance on the Rey 15). Thus, Dr. Kline emphatically stated that the test results are invalid—a pertinent point Plaintiff's counsel fails to mention. Similarly, Dr. Kline's comment as to Plaintiff's tests results reflecting profound mentally retardation, was made in the context of explaining why it was so obvious that she was malingering, because she clearly is <u>not</u> profoundly mentally retarded—another pertinent point counsel fails to mention.[11] Indeed, Dr. Kline's testing revealed that Plaintiff had so drastically exaggerated her psychological syptomatology that no psychological diagnosis could be made. Thus, the ALJ did not err in determining, based in part by relying on the opinions of Dr. Kline over Dr. Hord, that Plaintiff has no severe mental impairment.[12]

Finally, as to Dr. Loiry, Plaintiff is correct in noting that the ALJ failed to specifically mention his CE, but any error by the ALJ in failing to do so is harmless. In concluding that Plaintiff's alleged anxiety and depression do not cause more than minimal limitation in her ability to perform basic mental work activities and, therefore, are non-severe, the ALJ considered the four

---

[11] The undersigned need not decide whether counsel's omissions warrant any type of sanctions from this court. Plaintiff's counsel, David Evans, is presently under a ninety-day suspension from the practice of law by the Florida Bar, as evidenced by other filings in this court (*see, e.g.*, Jones v. Astrue, No. 5:11cv47/RS/EMT (doc. 16)) and information available on the Florida Bar's website. Thus, the undersigned will order that a copy of this Report be provided to Todd Brister, the attorney handling Attorney Evans' affairs during the term of his suspension (*id.* at doc. 18).

[12] Despite Plaintiff's malingering, Dr. Kline was able to assess a GAF score of 65 which, as mentioned above, equates to only mild symptoms.

Case No. 5:10cv210/RS/EMT

broad functional areas set out in the regulations for evaluating mental disorders (i.e., the Paragraph B criteria) (Tr. 13). He then concluded—based on the objective evidence of record as well as Plaintiff's treatment history—that Plaintiff has mild limitations in the first three areas and "no" episodes of decompensation in the fourth area (*id.*). It is therefore clear that the ALJ followed the specific procedures required by the regulations for evaluating mental impairments.

Next, in support of his findings of "none" or at most "mild" functional limitations, the ALJ noted that Plaintiff's only mental health treatment was in the form of medication prescribed by her primary care physician and/or a community health clinic (*id.*). Similarly, the ALJ noted that Plaintiff has never been referred to a mental health specialist for treatment, received outpatient therapy or counseling, or been admitted to an inpatient psychiatric facility (*id.*). *See, e.g.*, Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (absence of treatment indicates that a mental impairment is non-severe). The ALJ also noted that when Plaintiff sought treatment at the community clinic (CHCBC), she herself reported only mild anxiety (Tr. 13 (referencing Tr. 445)). Continuing, the ALJ correctly noted that Plaintiff told Dr. Kline she was not taking any medication at the time of his evaluation (Tr. 13), which is particularly relevant here because the record demonstrates that Plaintiff was easily able to obtain prescriptions for Xanax when she chose to pursue treatment; she also stated at one point that her medication "helped." Moreover, the ALJ noted, Dr. Kline reported no significantly abnormal objective clinical findings on mental status examination, and he identified no significant decline in attention during his interview of Plaintiff (*id.*). The ALJ also noted that Plaintiff's memory and intelligence test results were far below what would have been expected based on her reported history and presentation and, of course, that the results of the Rey 15 were strongly indicative of feigned or exaggerated memory impairment (*id.*). *See* Vuxta v. Comm'r of Soc. Security, 194 Fed. Appx. 874, 877 (11th Cir. 2006) (providing greater weight to the report of a medical expert whose records reflected a test for determining the veracity of a claimant's subjective complaints of psychological symptoms). Finally, the ALJ considered that both non-examining agency psychological consultants opined that Plaintiff has no more than mild mental limitations in any of the functional domains (Tr. 13). The ALJ assigned "significant weight" to the consultants' opinions, noting that they are consistent with the objective evidence of record and supported by the record as a whole.

Dr. Loiry's opinions do not undermine any of the foregoing findings or the ALJ's related conclusions. Initially, Dr. Loiry did not complete a mental RFC assessment or otherwise assess Plaintiff's functional abilities. Thus, as with Dr. Hord, Dr. Loiry's opinions cannot be translated into any useful or specific functional limitations and, correspondingly, cannot—and do not—conflict with the ALJ's findings of only "mild" or "no" functional limitations. Moreover, the opinions expressed in the narrative section of Dr. Loiry's report generally support the ALJ's findings. For example, in relevant part, Dr. Loiry noted that Plaintiff dressed, groomed, and spoke appropriately, and she was cooperative and made good eye contact. He also stated that her insight, judgment, and immediate memory were "good," her recent memory was "fair," her fund of information was "fair +," she was of "at least" average intelligence, and she could manage her funds if any were awarded.

Dr. Loiry assessed mood disorder depressive features and anxiety disorder (both of which—he opined—are due to Plaintiff's physical impairments, and both of which he diagnosed without conducting psychological testing). As this court is well aware, however, Dr. Loiry's diagnoses do not alone establish severity. *See, e.g.*, Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 (3d Cir. 2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two). Plaintiff must present evidence demonstrating that the conditions significantly limit her ability to do basic work activities or impair her capacity to cope with the mental demands of working. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a); *see also* Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004); Salles, 229 Fed. Appx. at 145. Plaintiff has presented no such evidence. Moreover, the ALJ considered Plaintiff's depression and anxiety diagnoses. Indeed, he determined that both conditions are medically determinable impairments (but neither is severe) (*see* Tr. 12–14). *Cf.* Vega v. Comm'r of So. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001) (when an ALJ fails to consider a claimant's condition despite evidence in the record of the diagnosis, remand is required).

Although Dr. Loiry stated that Plaintiff is "not employable," he appears to have based this opinion on Plaintiff's physical condition (*see* Tr. 270 (stating that Plaintiff needs treatment for her physical problems and pain, and that she is "not employable at the present time and this adds to her depression")). In any event, his "not employable" opinion need not be accepted by the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion);

20 C.F.R. § 404.1527(e)(3) (opinions on issues reserved to the Commissioner will not be given "any special significance"); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").

Finally, the ALJ fully considered—and assigned significant weight to—the opinions of Dr. Stainback, and Dr. Stainback's notes reflect that he fully considered the opinions of Dr. Loiry. More specifically, Dr. Stainback noted that Plaintiff's mental status examination by Dr. Loiry was within normal limits, and Plaintiff had no difficulties with concentration or memory during her interaction with Dr. Loiry (Tr. 342). Dr. Stainback then, like Dr. Ellis, assessed no more than mild functional limitations. Thus, by fully considering Dr. Stainback's opinions, the ALJ effectively considered Dr. Loiry's opinions.

In sum, while it would have been better for the ALJ to specifically discuss Dr. Loiry's CE, his failure to do so is harmless, since doing so would not have changed his ultimate conclusions. *See* East v. Barnhart, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination); Pichette v. Barnhart, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard); Reeves v. Heckler, 734 F.2d 519, 524 (11th Cir. 1984) (ALJ's erroneous conclusion harmless error where the ALJ had considered the relevant evidence in making the disability determination); Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying benefits, even if he had followed the proper procedure . . . ."); *see also* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (the ALJ need not specifically refer to every piece of evidence in the decision, as long as the ALJ's decision is not a broad rejection which is not enough to enable the court to conclude that the ALJ considered the claimant's medical condition as a whole) (citing Foote, 67 F.3d at 1561). Plaintiff is therefore not entitled to relief on this claim.

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F.

Case 5:10-cv-00210-RS-EMT   Document 24   Filed 09/12/11   Page 17 of 17

Page 17 of 17

3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED**:

That a copy of this Report and Recommendation be provided to Attorney Todd C. Brister by mail at 108 West 4th Street, Panama City, FL 32401, and by electronic mail at tbrister@knology.net.

And it is it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 12th day of September 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**